UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VECTOR MEDIA, LLC,

    *Plaintiff,*

v.

CITY OF NEW ROCHELLE,
KATHLEEN GILL, *in her official capacity as Acting Commissioner of Development*, *and* PAUL VACCA, *in his official capacity as Building Official*,

    *Defendants*.

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

1. Plaintiff Vector Media, LLC ("Vector Media"), by and through its undersigned attorneys, brings this action against the City of New Rochelle ("New Rochelle" or the "City"), Kathleen Gill, and Paul Vacca, and alleges as follows:

## NATURE OF THE ACTION

2. Since 2006, Vector Media has owned and operated a billboard within New Rochelle, including along Interstate 95 ("I-95"). Vector Media has invested considerable time and expense maintaining the billboard and the advertisements it bears have benefitted local businesses, landowners and ultimately, the City's tax base.

3. New Rochelle has waged an unlawful campaign to take Vector Media's billboard without due process or just compensation, to tailor its local billboard ordinances to favor certain speakers over others, to interfere with property rights for purely private pecuniary reasons, and

now to threaten millions of dollars in facially unreasonable and coercive fines to prevent Vector Media from enforcing its rights. Vector Media brings this action seeking redress.

## PARTIES, JURISDICTION & VENUE

4. Vector Media is a limited liability company formed under the laws of the State of Delaware with its principal place of business in New York, NY. Vector Media owns a billboard located on I-95 in New Rochelle.

5. New Rochelle is a body politic and municipal corporation located in and organized pursuant to the laws of the State of New York. New Rochelle is empowered to sue and be sued. *See* City of New Rochelle Charter ("Charter") art. 1, §1.

6. Kathleen Gill is the Acting Commissioner of Development for the City, and in that capacity, manages all aspects of the Department of Development, including enforcement of the City's building, zoning, and billboard ordinances. Charter § 76.00. Acting Commissioner Gill is sued in her official capacity.[1]

7. Paul Vacca is the Building Official for the City, and in that capacity, is responsible for enforcing various provisions of the New Rochelle Code, including New Rochelle Code § 270-16. *See* New Rochelle Code § 130-10. Mr. Vacca is sued in his official capacity.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because certain of Vector Media's claims arise under the Constitution and laws of the United States.

9. This Court has subject matter jurisdiction over Vector Media's state-law claims pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as Vector Media's claims arising under federal law.

---

[1] During most of the relevant period for this Complaint, Luiz Aragon served as Commissioner of Development. Commissioner Aragon resigned effective December 31, 2020.

2

5660612-3

10. This Court has personal jurisdiction over all Defendants because, upon information and belief, each Defendant is a resident of the forum State and because this action arises out of each Defendant's actions or omission within the forum State.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

**New Rochelle's Billboard Ordinance and Prior Litigation**

12. In or about 1996, New Rochelle adopted an ordinance that prohibited any "sign for a business, profession, activity (commercial or noncommercial), commodity or service not on the premises where the sign is located" (the "Billboard Ordinance"). This Ordinance operated as a total ban on "off-premises" advertising within the City, but did not include any comparable prohibitions for on-premise advertising.[2]

13. In June 1998, several out-of-home advertising companies filed suit in this District challenging the constitutionality of the ordinance under the First, Fifth, and Fourteen Amendments. The parties resolved the litigation in 2000 through the Stipulation.

14. Cappelli Erectors, Inc. ("Cappelli") was a plaintiff and party to the Stipulation. Vector Media purchased its billboard on I-95 from Cappelli in 2006 and became a party to the Stipulation by assignment.

15. The Stipulation permitted the advertising companies to build up to nine new billboards within the I-95 Corridor, which the Stipulation defined as land within 100 feet of the I-95 right-of-way. The City agreed to use its "best effort in good faith" to ensure that the plaintiffs

---

[2] An "off-premise" sign "advertises products or services that are not sold, produced, manufactured or furnished on the property where the sign is located." An "on-premise" sign "advertises products or services that are sold, produced, manufactured or furnished on the property where the sign is located." *See* OOOA, OOH Glossary of Terms, https://oaaa.org/AboutOOH/OOHBasics/OOHGlossaryofTerms.aspx#i.

5660612-3

could obtain all necessary regulatory approval for the new I-95 billboards. In exchange, the plaintiffs agreed to remove certain billboards in the City according to a three-phase schedule that was partially dependent on the timing of the approval of new I-95 billboards.

16. The Stipulation also exempted all remaining and newly authorized billboards (the "Remaining Billboards") from certain City laws. Specifically, this immunity provision exempted the Remaining Billboards from "any provision in or amendment to the Billboard Ordinance or any other code, rule, or regulation of the City requiring the removal of such Billboards, either immediately or with the passage of time, other than a provision or amendment which provides for just compensation pursuant to the New York Eminent Domain Procedure Law."

17. Pursuant to the Stipulation, the immunity period was set to expire on December 31, 2020, "at which time the Stipulation shall become subject to all City codes, rules and regulations then in effect."

18. The Stipulation was filed on this Court's docket on October 16, 2000, and approved by the presiding judge. Under the terms of the Stipulation, the Court retained jurisdiction to enter an order "enforc[ing] th[e] Stipulation," and to "provide for such other equitable and legal relief as the Court may deem just and proper."

19. On March 20, 2001, New Rochelle again amended its billboard ordinance by repealing the total and permanent prohibition of off-premise advertising within the City. Under the revised ordinance, the City declared that all off-premise billboards then in existence (*i.e.*, "on March 20, 2001") "may remain in existence until and shall be removed on or before . . . December 31, 2020." New Rochelle Code § 270-16 (the "Billboard Ordinance").

20. This revised Billboard Ordinance does not apply to billboards erected after March 20, 2001, and did not prohibit new billboards from being built within the City. Also, like its

4

predecessor, the current billboard ordinance contains no corresponding prohibition of on-premise advertising.

**The City's Bid Process**

21.     In August 2016, notwithstanding the limitations of N.Y. Public Authority Law § 361-a(4)(d), the City requested proposals for a City-wide Advertising Program, which included the right to build nine new billboards along I-95 (the "Billboard Contract"). According to the Request for Proposals ("RFP"), three of these billboards would become operational immediately, whereas the other six would become operational on or after January 1, 2021. The RFP contemplated awarding a 20-year contract to the winning bidder. As part of the RFP, the City instructed interested bidders to propose a percentage of revenue that the bidder would share with the City for the exclusive privilege of operating outdoor advertising in the City.

22.     Upon information and belief, the City has never before had a City-wide Advertising Program that conditioned the right to operate outdoor advertising in the City on revenue share payments to the City.

23.     In an attempt to preserve its right to operate its I-95 billboard without engaging in litigation, Vector Media submitted a competitive bid to the City for the Billboard Contract with full reservation of rights.

24.     Through the RFP process, the City stated that the winning bidder could operate existing billboards under the Billboard Contract, "assuming [the] incumbents will sell."

25.     In late 2016, New Rochelle awarded the Billboard Contract to a competing outdoor advertising company. The winning bid promised to pay the City $100,000, as well as 50% of its gross revenue derived from the Billboard Contract. It also promised to pay the City $225,000 for

each digital billboard face constructed under the Billboard Contract and $75,000 for each static billboard face.

26.  The City's award of permission to another company to erect new signs along I-95 was in violation of State law, which provides that new billboard structures may be permitted along that roadway only where the new sign was the "subject of a United States District Court settlement order regarding the regulations of such signs within" New Rochelle. N.Y. Pub. Auth. Law § 361-1(4)(d).  Whereas Vector Media's I-95 billboard structure met this requirement, the City's newly authorized signs would not.

27.  To date, the winning bidder has built three new billboards on I-95 in New Rochelle and, on information and belief, it plans to build the remaining six as soon as Vector and Clear Channel's signs are removed.

**The City's Enforcement of the Billboard Statute**

28.  The New Rochelle Billboard Ordinance remained substantively unchanged until September 22, 2020, when the City attached substantial new fines to the Billboard Ordinance. Upon information and belief, these new fines were added after Clear Channel disputed the City's authority to require Clear Channel to remove all of its billboards in New Rochelle and requested a hearing.  At the hearing approving the new fine provisions, City officials stated that the fines were added for the express and exclusive purpose of giving Clear Channel "more of an incentive to comply" with the City's removal order.

29.  The amendment was proposed at the September 16, 2020, Committee of the Whole meeting of the City Council and approved at the Council's next legislative meeting the following week.

30.     The amendment instructs the Building Officer to enforce a new escalating fine structure, of up to $10,000 per day per advertisement left posted after December 31, 2020, and an additional fine of up to $10,000 per day for each advertising structure left standing after December 31, 2020. These fines apply to both the billboard owner and the property owner, meaning that the City could impose fines of up to $40,000 per day for every billboard and structure on Vector Media and landlords.

31.     The escalating fine structure is cumulative and applies back to the day of the original notice of violation.  In other words, while the fine for not removing an advertisement is $0 for the first 14 days, on day 15, the Billboard Ordinance imposes a fine of $250 for that one day and $250 per day ($3,500 total) for the preceding 14 days. Likewise, on day 181, the daily fine for leaving an advertisement posted escalates to $500, and the fines for days 1–180 would be retroactively increased to $500 as well.

32.     The maximum penalty of $10,000 was not part of the initial legislation. Then-Development Commissioner Aragon initially proposed penalties of just $250 per day, but the Mayor of New Rochelle asked Commissioner Aragon to revise the fines to make them "more stringent" and give them "more teeth," even though Commissioner Aragon testified that a $250 per day fine was reasonable.

33.     One of these billboard structures is located within New Rochelle, along I-95, and is owned by Vector Media, along with the associated permits. The billboard stands on property leased from a landowner, subject to a long-term, renewable lease.

34.     Under New York Law, Vector Media's billboard is treated and taxed as real property.

35. Vector Media's billboard was built prior to March 20, 2001. Vector Media's billboard in New Rochelle generally generates over $250,000 in annual revenue.

36. Advertisers pay a premium for space on interstate billboards, both because of the number of impressions these signs generate and because advertisers can build a campaign around interstate billboards to reach a large segment of the commuting and traveling public.[3] In addition, under New York State law, only nine billboard structures in total may be erected along the New Rochelle portion of I-95. N.Y. Pub. Auth. Law § 361-a(4)(d). The fair market value of these billboards, therefore, is significant, because premiere advertising on I-95 has both a high demand and a low supply.

37. This combination of high demand and low supply significantly increases the value of these signs. In fact, they are among the most valuable billboards in the region because of these economic factors.

38. The City has never delivered any official notice or formal determination supporting its decision to require removal of the billboard, or what public purpose is advanced by the removal order.

39. Clear Channel sued New Rochelle to prevent enforcement of its removal order and the fine structure, and sought injunctive relief. *See Clear Channel, LLC v. City of New Rochelle, et al.*, 7:20-cv-09296 (S.D.N.Y.). In response, New Rochelle agreed to stay enforcement of its removal order and fine structure until February 1, 2021, to allow the motion more time to be decided.

---

[3]   "Impression" is an outdoor advertising metric that measures "[t]he total number of times people are likely to notice an ad on an [out of home] display." See OOH Glossary of Terms, supra note 1.

40. Similarly situated to Clear Channel, Vector Media brings this action seeking redress for New Rochelle's unlawful conduct.

## CAUSES OF ACTION

### COUNT I
### Takings Clause: Lack of Public Purpose
### U.S. Const. amends. V & XIV; 42 U.S.C. § 1983

41. Vector Media incorporates the preceding paragraphs as though fully set forth herein.

42. The City has ordered Vector Media to remove from the City the billboard that Vector Media owns located on I-95.

43. Defendants are acting under color of state law.

44. The City has not issued this order in furtherance of a legitimate public purpose. Rather, the City's true purpose is to effectively transfer Vector Media's entitlement under state law to operate advertisements on I-95 from Vector Media to a different private entity to financially enrich that entity. This determination to take private property to favor one private actor over another lacks a valid public purpose.

45. The City's conduct constitutes an unlawful taking and Vector Media will be injured by the removal of its billboard in the City.

46. Vector Media is therefore entitled to the relief prayed for below.

### COUNT II
### Takings Clause: Just Compensation
### U.S. Const. amends. V & XIV; 42 U.S.C. § 1983

47. Vector Media incorporates the preceding paragraphs as if fully set forth herein.

48. Vector Media's billboards are real property protected from an uncompensated taking under the Fifth Amendment, which is made applicable to state and local governments through the Fourteenth Amendment.

49. State law separately also protects Vector Media against an uncompensated taking of its billboards.

50. If allowed to proceed, the City's enforcement of the Billboard Ordinance would both require the physical removal of Vector Media's property and deprive Vector Media of all economic value in its property. The City's order requiring Vector Media to take down its billboard thus effectuates a taking. Vector Media is therefore entitled to just compensation for the taking of its billboard.

51. The Fifth Amendment requires payment of just compensation.

52. The City has not provided compensation to Vector Media and has refused to initiate a proceeding by which just compensation could be determined.

53. Vector Media will be injured by the removal of its billboard in the City without just compensation.

54. Vector Media is therefore entitled to the relief prayed for below.

## COUNT III
### Deprivation of Due Process: Notice and a Hearing
### U.S. Const. amend. XIV; 42 U.S.C. § 1983

55. Vector Media incorporates the preceding paragraphs as though fully set forth herein.

56. At a minimum, due process requires the City to provide Vector Media with notice and an opportunity to be heard before a neutral arbiter before it can deprive Vector Media of its property.

57. The City has failed to provide Vector Media with any of the basic elements of due process. In particular, the City has not provided Vector Media with clear notice of the basis for the order of removal or an opportunity to be heard on why the order is unconstitutional, contrary to federal and state law, and unsupported by the Billboard Ordinance.

58. Neither the City nor Aragon has provided written notice of the City's decision, has explained the legal bases for the City's decision in any medium, or has permitted Vector Media a hearing to challenge the decision.

59. Aragon was not a neutral arbiter but rather represented the City, which is effectuating the taking and which stands to profit financially from an uncompensated taking.

60. The deprivation of process, including lack of proper notice or a hearing, was prejudicial to Vector Media, which will suffer injury if its billboard is ordered removed without notice and a hearing before a neutral arbiter.

61. Vector Media is therefore entitled to the relief prayed for below.

### COUNT IV
### Deprivation of Due Process: Failure to Provide Required Procedures
### U.S. Const. amend. XIV; 42 U.S.C. § 1983

62. Vector Media incorporates the preceding paragraphs as though fully set forth herein.

63. State law requires the City to comply with Article V of the EDPL to determine and pay just compensation before it can take any billboard within the territorial jurisdiction of the HBA and FSA or in any area zoned industrial or manufacturing.

64. The City has not complied with any of these procedures before ordering the removal of Vector Media's billboard.

65. A complete failure to comply with the procedural requirements of the EDPL is a violation of due process.

66. Vector Media will be injured by the removal of its billboard without the processes guaranteed by the EDPL.

67. Vector Media is therefore entitled to the relief prayed for below.

## COUNT V
### Violation of the First Amendment
### U.S. Const. amends. I & XIV; 42 U.S.C. § 1983

68. Vector Media incorporates the preceding paragraphs as if set forth fully herein.

69. The First Amendment, made applicable to state and local governments by the Fourteenth Amendment, prohibits the City from abridging Vector Media's freedom of speech.

70. Billboards are a constitutionally protected form of speech.

71. Vector Media posts a variety of different messages on its billboard, including non-commercial messaging.

72. The City may not, consistent with the First Amendment, regulate speech based on its content unless the regulation is narrowly tailored to achieving a compelling government interest.

73. The Billboard Ordinance is a content-based regulation of speech, because it regulates off-premise advertising based on the content of that speech. Specifically, in order to enforce this law, City officials must examine the content of a sign in order to determine whether the content relates to activities occurring on those premises or not. Thus, the Billboard Ordinance draws an unlawful content-based distinction.

74. The Billboard Ordinance further burdens Vector Media's speech by imposing exorbitant, mandatory fees if Vector Media fails to remove its billboard.

75. The City does not advance any significant, let alone compelling, interest in ordering the removal of Vector Media's off-premise advertising or for discriminating between on-premise and off-premise advertising.

76. The Billboard Ordinance requires the removal of all off-premise advertising by December 31, 2020, without any individualized showing that the structure is unsafe or unsightly. By contrast, on-premise advertising structures can remain in place in perpetuity, regardless of the age, condition, or appearance of the structure.

77. The complete prohibition of off-premise advertising also is not narrowly tailored. For example, a sign-by-sign determination, applicable to both on-premise and off-premise advertising, would be a more narrowly tailored approach to advancing any public interest in safety or aesthetics.

78. Vector Media will be injured if the City is permitted to apply the Billboard Ordinance in a manner that violates the First Amendment.

79. Vector Media is therefore entitled to the relief prayed for below.

## COUNT VI
### Violation of the Excessive Fines Clause
### U.S. Const. amends. VIII & XIV; 42 U.S.C. § 1983

80. Vector Media incorporates the preceding paragraphs as if set forth fully herein.

81. The Eighth Amendment, made applicable to state and local governments by the Fourteenth Amendment, prohibits the City from imposing excessive fines.

82. Fines are particularly suspect when imposed against constitutionally protected activity, such as speech.

83. Fines are excessive when they are grossly disproportionate to the offense.

84. The City's fine schedule imposed by the Billboard Ordinance is grossly disproportionate to any alleged violation of the Ordinance.

85. The fine schedule in the Billboard Ordinance is mandatory: it instructs that the Building Officer shall impose daily fines escalating to $20,000 per day per sign, and leaves no discretion for the Building Officer to decide, on a case-by-case basis, what fine would be reasonable. The Ordinance imposes an addition, $20,000 per day per sign on the billboard owner's landlord.

86. Vector Media will be injured by the threat of and imposition of these unconstitutionally excessive fines.

87. Vector Media is therefore entitled to the relief prayed for below.

## COUNT VII
### Violation of the New York FSA
### N.Y. Highway Law § 88

88. Vector Media incorporates the preceding paragraphs as if set forth fully herein.

89. The HBA and FSA apply to Vector Media's billboard in the City. In addition, the just compensation provision of Section 88, which implements the State's obligations under the FSA, reaches both HBA billboards and non-HBA signs that are "in a commercial or industrial zone or area." Vector Medias billboard is subject to the HBA and FSA and is in a commercial or industrial zone.

90. The New York FSA mandates that the City must pay just compensation—not amortization—for signs within the HBA's territorial jurisdiction. This compensation, moreover, must be determined according to the just compensation procedures of Article V of the EDPL.

91. The New York FSA further mandates that such compensation must be paid before a municipality may order the removal of any billboard.

92. The City purports to have ordered the removal of Vector Media's billboard within New Rochelle.

93. The City has not complied with Article V of the EDPL and has refused to provide just compensation for the removal of Vector Media's billboard.

94. Vector Media will be injured by the uncompensated removal of its sign.

95. Vector Media is therefore entitled to the relief prayed for below.

### COUNT VIII
### Violation of the EDPL

96. Vector Media incorporates the preceding paragraphs as if stated fully herein.

97. The EDPL establishes procedures that the City must follow before it can take private property. It requires, among other steps, public notice, a public hearing, findings of fact, and judicial review before the City can condemn and take title to private property.

98. In addition to these condemnation-related procedural requirements, Article V of the EDPL outlines the process for determining just compensation. Article V provides property owners with a judicial proceeding to adjudicate just compensation owed, and allows the property to introduce evidence challenging the government's valuation of the property.

99. Article V of the EDPL expressly applies to any takings of billboards covered by the FSA or in areas zoned industrial or manufacturing. The EDPL applies in its entirety to takings that are not effected pursuant to a local ordinance or law.

100. The City has not complied with any provision of the EDPL in ordering the removal of Vector Media's billboard.

101. Vector Media has been and will be injured by the uncompensated removal of its sign without compliance with state law.

102. Vector Media is therefore entitled to the relief prayed for below.

## COUNT IX
### Tortious Interference with Contract and Business Relations

103. Vector Media incorporates the preceding paragraphs as if stated fully herein.

104. Vector Media has business relationships with landlords who own the property where Vector Media's billboards sit. These business relations are valuable to both Vector Media and the property owner.

105. The City is aware of the existence of these business relations.

106. On September 22, 2020, in an effort to give billboard owners "more of an incentive to comply" with its removal order, the City enacted a new, coercive fine applicable to any property owner that does not remove nonconforming billboards from their property. Then-Commissioner Aragon stated that the City intends to enforce these fines against landlords unless billboards are removed.

107. This new fine threatens Vector Media's landlord with daily fines up to $20,000 per day if they do not breach or terminate their contract with Vector Media.

108. The City's threat to enforce an unreasonable and baseless fine is wrongful and is intended to disrupt Vector Media's business relationship with its landlords.

109. Vector Media has been harmed by the City's wrongful conduct. In particular, Vector Media has been impeded in its ability to negotiate extensions to its contracts with property owners who the City has wrongfully threatened.

110. Vector Media is therefore entitled to the relief prayed for below.

## COUNT X
## Breach of Contract

111.   Vector Media incorporates the preceding paragraphs as if stated fully herein.

112.   The Stipulation is a valid and enforceable contract governed by the laws of the State of New York.

113.   Under the Stipulation, Vector Media's billboard was granted immunity from "any provision in or amendment to the Billboard Ordinance or any other code, rule, or regulation of the City requiring the removal of [Vector Media's] Billboard[], either immediately or with the passage of time" until December 31, 2020.

114.   Vector Media procured this immunity period as successor-in-interest in exchange for good and valuable consideration, including an agreement to remove certain signs within the City and to dismiss its then-pending challenges to the Billboard Ordinance.

115.   Vector Media and its predecessor-in-interest has fully performed its obligations under the Stipulation.

116.   The City has breached the Stipulation period by purporting to treat the immunity period as amortization for a forced taking of Vector Media's billboard. This violates the Stipulation in two distinct ways. First, the City has breached the Stipulation by seeking to apply the Billboard Ordinance against Vector Media during the immunity period. Second, the City has breached the Stipulation by attempting to count the immunity period granted under the Stipulation for purposes of amortization to support removal of the billboards.

117.   Vector Media has been and will be injured by the City's breach of contract inasmuch as Vector Media is being deprived of the benefit of its bargain.

118.   Vector Media is therefore entitled to the relief prayed for below.

**PRAYER FOR RELIEF**

Vector Media demands judgment on the City of New Rochelle and on Kathleen Gill and Paul Vacca, in their official capacities, on all counts, and further requests the following relief as appropriate:

A. Enjoin the Defendants, both preliminarily and permanently, from: ordering the removal of Vector Media's billboard without payment of just compensation and/or imposing fines, or threatening to impose fines, against Vector Media or its landlord for the non-removal of Vector Media's billboard or advertising structure;

B. Declare that the Defendants have violated Vector Media's rights under the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, the Free Speech Clause of the First Amendment, the Excess Fines Clause of the Eighth Amendment, the New York FSA, the New York EDPL, the New Rochelle Billboard Ordinance, the Stipulation, and the New York common law;

C. Further declare that: (1) the Billboard Law is facially unconstitutional; and (2) any future efforts to order the removal of Vector Media's billboard must provide just compensation, must comply with procedural requirements, including the EDPL, and may not unlawfully target speech based on its content.;

D. Award compensatory, consequential, and nominal damages in an amount to be proven at trial;

E. Award Vector Media just compensation in the form of the fair market value of any billboards ultimately ordered removed by the City;

F. Assess pre- and post-judgment interest;

G. Award attorneys' fees and costs to the extent otherwise permitted by law; and

H. Enter such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Vector Media demands a trial by jury on all issues and claims so properly triable.

Dated: New York, New York
January 12, 2021

OLSHAN FROME WOLOSKY LLP

By:     */s/ Brian A. Katz*
    Brian A. Katz
    1325 Avenue of the Americas
    New York, New York, 10019
    (212) 451-2300

    *Attorneys for Plaintiff Vector Media, LLC*